IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


ERIC R. SPAR,

      Plaintiff,

    v.                       Case No. 2:14-cv-546
                               Judge Smith
                               Magistrate Judge King

GARY C. MOHR, *et al.*,

      Defendants.


ORDER AND
REPORT AND RECOMMENDATION

    Plaintiff Eric R. Spar, an inmate at the Madison Correctional Institution ("MaCI"), brings this action under 42 U.S.C. § 1983 alleging that defendants, employees of MaCI and the Ohio Department of Rehabilitation and Correction ("ODRC"), acted with deliberate indifference to plaintiff's medical needs in violation of the Eighth Amendment to the United States Constitution. The *Complaint* alleges that plaintiff suffers from diverticulosis and that defendants' failure to provide psyllium husk fiber (commonly known as Metamucil) and a high fiber diet to treat the condition constitutes deliberate indifference to his serious medical need. *Complaint*, ECF 4, ¶ 21.

    On the same day that he filed the *Complaint*, plaintiff, who at the time was proceeding without the assistance of counsel, filed a motion for preliminary injunction requiring defendants to provide him a high fiber diet and four tablespoons of psyllium fiber daily. ECF 5. The Court denied plaintiff's motion on October 2, 2014, concluding that the evidence before the Court did "not establish a strong

likelihood that Plaintiff will prevail on his claims." *Order*, ECF 47; *Report and Recommendation*, ECF 27.

Plaintiff, who is now represented by counsel, filed a renewed motion for a preliminary injunction on March 24, 2015, again seeking Metamucil and a high fiber diet to treat his diverticulosis. *Plaintiff Eric Spar's Motion for Temporary Restraining Order and/or Preliminary Injunction* ("*Plaintiff's Motion*"), ECF 60.[1] An evidentiary hearing was held on July 1, 2015, at which plaintiff appeared and testified, as did defendant Andrew Eddy, M.D., and Richard Charles Bozian, M.D., who testified as a medical expert on behalf of plaintiff. The parties filed post-hearing memoranda. *Defendants' Response in Opposition* ("*Defendants' Response*"), ECF 76; *Post Hearing Brief* ("*Plaintiff's Memorandum*"), ECF 77; *Defendants' Memorandum in Response to Plaintiff's Post Hearing Brief* ("*Defendants' Reply*"), ECF 81; *Plaintiff's Reply*, ECF 82.

On August 20, 2015, plaintiff filed a motion to supplement the record with medical records relating to his stay in the prison infirmary from July 26 to August 2, 2015. *Plaintiff's Motion to Supplement Post-Hearing Briefing*, ECF 86. There has been no opposition to that request. *See Defendants' Response to Plaintiff's Motion to Supplement Post Hearing Briefing*, ECF 88. *Plaintiff's Motion to Supplement Post-Hearing Briefing*, ECF 86, is therefore **GRANTED**. For the reasons that follow, it is **RECOMMENDED** that, unless evidence is presented that plaintiff is now provided Metamucil, *Plaintiff Eric*

---

[1] Plaintiff thereafter withdrew the motion as it relates to his claim against defendant Marburger, a dietician at MaCI. *See Order*, ECF 63.

*Spar's Motion for Temporary Restraining Order and/or Preliminary Injunction*, ECF 60, be **GRANTED.**

## I.

Plaintiff testified at the evidentiary hearing that he has suffered from constipation since childhood and has difficulty having a bowel movement without "some kind of help or something." *Hearing Transcript*, ECF 73, p. 60. After beginning his incarceration, plaintiff began experiencing lower left quadrant pain, cold chills, and hot flashes; he often felt sick. *Id.* at pp. 66-67. Plaintiff was diagnosed with diverticulosis after undergoing a CAT scan in 2008 or 2009. *Id.* at pp. 68-70.

Diverticulosis is a weakness and out-pouching of the colon wall. *Id.* at p. 28; *Plaintiff's Exhibit 6* ("*Dr. Kanuru Deposition*"), p. 35. The "vast majority" of people with diverticulosis are asymptomatic. *Hearing Transcript*, pp. 29, 54. *See also Dr. Kanuru Deposition*, p. 40. However, some people experience bouts of diverticulitis, which is an inflammation or infection within the diverticulum that can cause left lower quadrant or left-sided abdominal pain, nausea, vomiting, chills or fever, and alternating bouts of diarrhea and constipation. *Hearing Transcript*, pp. 31, 54; *Dr. Kanuru Deposition*, pp. 40-41; *Plaintiff's Exhibit 7* ("*Dr. Hussan Deposition*"), p. 43. Diverticulitis can lead to peritonitis, sepsis, bowel obstruction, scar tissue, and fistula. *Dr. Kanuru Deposition*, pp. 42-43; *Dr. Hussan Deposition*, p. 43. The parties agree that plaintiff has suffered bouts of diverticulitis while incarcerated. *See Defendant's*

3

*Response*, p. 2. Plaintiff estimates that he has experienced eight to 12 bouts of diverticulitis over the course of the past 10 years, *id.* at p. 105; *see also id.* at 33, 64, and the medical records document four or five episodes of diverticulitis over the course of twelve years, *id.* at p. 41, including one episode while plaintiff was taking Metamucil. *Id.* at p. 31.

After he was diagnosed with diverticulosis, plaintiff testified, he was prescribed Metamucil and was advised to change his eating habits and to increase his water consumption. *Id.* at p. 70. With Metamucil, plaintiff testified, his pain ceased and he was able to have bowel movements without straining, was able to start exercising and walking, and lost 60 pounds. *Id.* at pp. 71-72. Although Metamucil was originally prescribed for him, that medication was removed from the prison's formulary in 2010, although it remained available for purchase by inmates in the prison commissary. *Id.* at pp. 75, 115-16. When Metamucil was out of stock at the commissary, plaintiff "would automatically start to regress and go back to suffering again." *Id.* at pp. 75-77. In January 2014, the ODRC discontinued the sale of Metamucil in prison commissaries after receiving notice from the Los Angeles County Sheriff's Office that Metamucil could be fermented to make alcohol and, in its solidified form, had been used to fabricate shanks. *Id.* at pp. 76, 124; *Defendants' Exhibit I*; *Declaration of Andrew D. Eddy, M.D.*, ECF 12-1, ¶ 8.

Plaintiff testified that, without Metamucil, he now takes eight FiberCon tablets per day, Miralax every morning, Lactulose every

4

afternoon and, if he feels really sick, Milk of Magnesia at night. *Hearing Transcript*, pp. 86-87.  Plaintiff also takes magnesium citrate "every couple months . . . just to clear everything out."  *Id.* at p. 87.  However, Lactulose causes diarrhea and makes him feel like he has the flu, Milk of Magnesia causes "explosive" bowel movements, and magnesium citrate causes "almost uncontrollable contractions and just yanks everything out of you." *Id.* at pp. 82-83, 87-88.  Plaintiff purchases FiberCon in the commissary, but it provides no relief and can cause gas.  *Id.* at pp. 77-78.  Metamucil "is the only thing that [plaintiff] ever found that worked," *id.* at p. 84; without Metamucil he is in pain every day:

> This is what I go through every day of my life.  I wake up in the morning with pain.  And depending on how my bowel movement is that morning, it is all liquid, but if it is not a whole lot, the pressure and pain build all day.  And by the evening time, I feel like I am sick, like I have got the flu.  And all I can do is get a hot shower and lay in bed and go to sleep and hoping [sic] the next day will be better.

*Id.* at p. 87.

Dr. Bozian, a Board certified internist with a specialty in gastroenterology and an emeritus professor of medicine, testified that constipation is caused by "inadequate fluid intake, inadequate dietary fiber,  . . . and inadequate physical activity." *Id.* at p. 18. A "significant family history of diverticulosis" is also a "major consideration" in cases of constipation. *Id.* According to Dr. Bozian, plaintiffs' reported symptoms can be "completely attribute[d] . . . to chronic constipation." *Id.* at 41.

Dr. Bozian also testified that fiber is best obtained through the diet, *i.e.,* "fruits, vegetables, nuts, legumes," rather than through

fiber supplements. *Id.* at 43. Too much fiber, without adequate fluid intake, can also cause constipation. *Id.* at 45-46. Based on his review of plaintiff's medical records, Dr. Bozian testified that, originally, plaintiff did not comply with the recommendations of "the dietician and the physicians" in connection with his diet and exercise. *Id.* at pp. 43, 46. "[A]fter about a year or so," however, plaintiff became compliant but was nevertheless symptomatic. *Id.* at 43, 44. Dr. Bozian believes that Metamucil is compatible with plaintiff's reported symptomatology and, based on plaintiff's reports, is medically necessary to treat plaintiff's chronic constipation. *Id.* at pp. 18, 20, 28.

   Dr. Bozian testified that the psyllium husk fiber found in Metamucil is a natural source of soluble and insoluble fiber that is partially fermentable and provides bulk in the colon. *Id.* at pp. 19-20. *See also Plaintiff's Exhibit 5* ("*Dr. Levine Deposition*"), p. 20. Psyllium husk also acts as an anti-inflammatory. *Hearing Transcript*, p. 44. The calcium polycarbophil found in FiberCon is a synthetic complex carbohydrate that "has the properties of absorbing fluid and swelling in the same way psyllium husk does," but it is an insoluble fiber. *Id.* at p. 21. According to Dr. Bozian, the psyllium powder found in Metamucil "is partially fermentable and that improves the environment of [the] colon." *Id.* at p. 22. Dr. Bozian testified that different people may respond differently to different treatments for constipation. *Id.* at 23-24. Moreover, the medical community does not agree that Metamucil is the "best product" for the treatment of diverticulosis. *Id.* at pp. 48-49.

6

Elliot Neufeld, D.O., plaintiff's treating physician at MaCI, *id.* at p. 146; *Plaintiff's Memorandum*, *PAGEID* 684, submitted a request for non-formulary drug prior authorization form on September 26, 2013, requesting that plaintiff be prescribed Psyllium Powder (or Metamucil). *Plaintiff's Exhibit 1-A.* Dr. Neufeld noted that plaintiff had tried, without success, fiberlax, fiber tabs, Lactulose, and Milk of Magnesia, and he offered the following justification for the request:

> 41 Y/O W/M with H/O Diverticulosis Dx 2006. Ct abd 2009 showed fairly extensive sigmoid diverticulosis. Well controlled on Psyllium Powder. Has had problems with constipation and Pain, cramps and gas. Oral fibertabs don't provide a high enough dose and he would need to take 15 to 20 at a time. There are restrictions on the amount he is able to buy. He would be willing to get the meds [dispense by nurse ("DBN")].

*Id.* The request was denied by Dr. Eddy the same day: "Let him make better nutritional choices." *Id.* In the section titled "additional information requested by state medical director and response," Dr. Eddy noted that plaintiff "spent over 33 dollars on junk food [the previous] week, cookies, chips, peanut butter[, etc.] Have him see dietician and possibly a commissary restriction. He may continue to use commissary fiber. Make sure he takes them with plenty of water." *Id.*

Dr. Neufeld submitted a second prior authorization request on February 10, 2014, asking that plaintiff be prescribed Metamucil. *Plaintiff's Exhibit 1-B.* Dr. Neufeld again noted that plaintiff had tried, unsuccessfully, fiberlax, fiber tabs, Lactulose, and Milk of Magnesia, and he offered the following justification:

> 41 Y/O W/M with H/O Diverticulosis DX 2006. CT of the Abd
> showed fairly extensive diverticulosis of the sigmoid
> colon. He has been doing well by buying metamucil in
> commissary. This has been discontinued by DRC. He has
> problems with constipation with pain, cramps and gas. He
> has had diverticulitis flair [sic] ups requiring
> antibiotics. The Psyllium Powder could be dispensed DBN.

*Id*. Dr. Eddy again denied the request because "change diet is first

line treatment." *Id*. Dr. Eddy noted the following:

> Patient should eliminate low fiber foods from diet such as
> pastries, mac and cheese and ramen noodles. He can still
> also buy the fiber tabs that may be helpful if he quits
> eating the low fiber foods. Suggest admission to infirmary
> to control diet, help with pain, provide antibiotics and
> monitor each time he has an outbreak.

*Id*.

Dr. Neufeld submitted a third request for prior authorization to

prescribe Metamucil on April 15, 2014. *Plaintiff's Exhibit 1-C*. Dr.

Neufeld again noted that other formulary therapies had failed. He

offered the following justification:

> 41 year old with Diverticulosis with recent case of
> Diverticulitis, DX 2006. CT shows fairly extensive
> diverticulosis of sigmoid colon. Did well when on
> Metamucil. Recent flair [sic] up required antibiotics.
> There is no soluble fiber available on commissary. Has
> adjusted purchases in commissary. Consult with dietician
> 12/13/2013 and 4/2/2014 recommended to continue current
> diet and add Metamucil. This could be a DBN.

*Id*. Dr. Eddy denied the request once again because "other treatment

available. [P]atient should eat in chow hall." *Id*. In the section

titled "additional information requested by state medical director and

response," Dr. Eddy stated the following:

> Though it is not what the patient wants, he should be
> helped by taking fibertabs from commissary. If he has
> problems with low fiber foods then he should stop
> purchasing cookies, cheese, pasta and pretzels. Canned
> meat is also low fiber. He should eat all the vegetables
> and fruits from the chow hall. If he has problems, then he

8

should be admitted to the infirmary to be monitored, labs
drawn and treated appropriately until 24 hours after his
symptoms resolve. He purchased one oatmeal in the past
month. Probably the highest fiber item in commissary.

*Id*.

On April 24, 2014, after a "recent episode of diverticulitis,"
plaintiff was referred to a dietitian. *Plaintiff's Exhibit 9*. The
dietician noted that plaintiff was "making better commissary choices
of what is available (Turkey, Chicken, Beans, Brown Rice)." *Id*.
Plaintiff was prescribed six meals with peanut butter and apples "as
available to offer more fiber to help prevent further infections."
*Id*. Plaintiff was encouraged to continue appropriate increased fiber
commissary purchases and "100% meal compliance." *Id*.

Dr. Neufeld submitted a fourth request for prior authorization to
prescribe Metamucil on November 24, 2014. *Plaintiff's Exhibit 1-D*.
Dr. Neufeld commented that plaintiff was currently taking Bentyl,
Lactulose, and Miralax, and that Cipro[2] was no longer effective. *Id*.
Dr. Neufeld offered the following justification for his request:

> 41 year old with Diverticulosis with recent case of
> Diverticulitis, DX 2006. CT shows fairly extensive
> diverticulosis of sigmoid colon. Did well when on
> Metamucil. Recent flair [sic] up required antibiotics.
> There is no soluble fiber available on commissary. Has
> adjusted purchases in commissary. Consult with dietician
> 12/13/2013 and 4/2/2014 recommended to continue current
> diet and add Metamucil. This could be DBN. Has had a
> flair [sic] up recently requiring Flagyl. This was
> beneficial for about a month.

*Id*. Dr. Eddy denied the request on the basis that "other treatment
[is] available." *Id*. He explained that "Patient should eliminate all
low fiber foods from commissary purchases (cookies, hamburgers, cake)

---
[2] Cipro, an antibiotic, was prescribed to treat an outbreak of
diverticulitis. *See Hearing Transcript*, pp. 131-32.

and regularly purchase Fibercon.  Admit to infirmary and follow cbc etc. when he has a flare up." *Id*.

During a Collegial Review Committee meeting with Dr. Eddy and Nurse Practitioner John Gardner, Dr. Neufeld requested that a barium enema be authorized.  Although that request was denied, a colonoscopy was authorized.  *Hearing Transcript*, pp. 122-23.  Plaintiff underwent the colonoscopy on April 15, 2015 at The Ohio State University Wexner Medical Center ("OSUWMC").  *Plaintiff's Exhibit 2*.  The colonoscopy revealed non-bleeding internal hemorrhoids; stool in the sigmoid colon and in the descending colon; and diverticulosis in the sigmoid colon, descending colon, transverse colon, and ascending colon.  *Id*. at p. 3.  The colonoscopy was performed by Reshi C. Kanuru, M.D., a fellow at OSUWMC specializing in internal medicine with a subspecialty in gastroenterology, hepatology, and nutrition, who was supervised by Hisham Hussan, M.D.  *Dr. Kanuru Deposition*, pp. 10, 12; *Dr. Hussan Deposition*, pp. 14-15.  Plaintiff testified that he told Dr. Kanuru prior to the procedure that only Metamucil had worked for him in the past and he asked that Metamucil be referenced in his file.  *Hearing Transcript*, pp. 100-01.  Dr. Kanuru and Dr. Hussan recommended that plaintiff receive "metamucil daily to help with constipation as patient responded previously."  *Plaintiff's Exhibit 2*.  Dr. Kanuru testified on deposition that plaintiff "was very persistent that Metamucil was the only thing that worked for him."  *Dr. Kanuru Deposition*, pp. 49-50. Dr. Kanuru's recommendation of Metamucil was "based on what he told me, that he wanted to have Metamucil, and it would be available for him based on my recommendation, so I advocated

10

for him to get Metamucil." *Id.* at  p. 71.

Dr. Eddy telephoned Edward J. Levine, M.D., a gastroenterologist who serves as the medical director for prison care at OSUWMC and is the official liaison between OSUWMC and ODRC for all subspecialty medical issues; Dr. Eddy believed that Dr. Levine had performed plaintiff's colonoscopy. *Hearing Transcript*, p. 135-36. *See also Dr. Levine Deposition*, p. 6.  Dr. Levine, who also supervises Dr. Kanuru, *id.*; *Dr. Levine Deposition*, pp. 6, 9, advised Dr. Eddy of the results and recommendation for Metamucil. Explaining that Metamucil had been removed from the prison formulary and commissary, Dr. Eddy asked Dr. Levine if polycarbophil is a suitable substitute for Metamucil and to put a note in plaintiff's file to that effect.  *Hearing Transcript*, pp. 135-37.  Dr. Levine entered the following progress note in plaintiff's file: "Discussed case and situation with Dr. Andy Eddy. Reviewed patients [sic] colonoscopy.  It is fine for patient to use polycarbophil for his constipation/diverticular disease instead of Metamucil." *Plaintiff's Exhibit 3*.

Plaintiff was admitted to the infirmary on July 26, 2015, to monitor his diverticulitis and chronic constipation.  ECF 86-1, p. 10. Upon admission, plaintiff represented that he had not had a bowel movement for two days. *Id*. at 30. Plaintiff's food and water intake was monitored, as were the characteristics of his urine and stool. Plaintiff regularly reported abdominal pain, *see, e.g., id*. at 6, 23, 35, although nursing notes frequently noted no signs of distress. *See, e.g., id*. at 12, 16, 17, 20. Plaintiff continued to take FiberCon, *id*. at 15, 20, 26, and complained of increasing pain. *Id*. at 22, 26. X-

rays of the abdomen, taken on July 27, 2015, revealed "[m]ild amounts of retained fecal material," and were read as normal. *Id.* at 34. On July 30, the attending doctor (whose name is not legible) speculated that plaintiff "may need laxative." *Id.* at 15. Repeat x-rays taken on July 31, 2015, revealed a "large colonic stool burden," and were read as suggestive of "underlying constipation." *Id.* at 35. Magnesium citrate, a laxative, was administered. *Id.* at 11-12. Later that same day, three bowel movements were reported, ranging from formed to liquid. *Id.* at 3, 10. Three loose, brown stools were also reported on August 1, 2015. *Id.* at 3, 7. Plaintiff continued to complain of abdominal and hemorrhoid pain. *Id.* at 9. Plaintiff was discharged on August 2, 2015. *Id.* at 10. At discharge, plaintiff complained of "belly pain" and "rectal pain from hemorrhoids," for which plaintiff intended to "up his [over the counter] meds. . . ." *Id.* at 6.

According to Dr. Bozian, Dr. Eddy's response to Dr. Neufeld's requests that Metamucil be authorized, *i.e.,* that plaintiff increase his dietary fiber and decrease his consumption of low fiber foods, "appears to be the standard treatment." *Id.* at p. 50. However, in light of the medical records indicating that plaintiff had become compliant with the dietician's instructions yet had remained symptomatic, Dr. Eddy's failure to authorize Metamucil does not reflect merely a disagreement between a medical provider and his patient as to the best course of treatment:

> I would say that if on four occasions that the attending physician is reporting that the patient has complied with all of the recommendations that were done and that the FiberCon was not working and for that – within that same day, the response is go back to the commissary and stop eating pizza and get relief with the FiberCon and buy more

FiberCon, I would say that that's a dereliction of duty in
the care of a patient.

*Id.* at p. 56.

**II.**

The decision whether or not to grant a request for interim
injunctive relief falls within the sound discretion of the district
court. *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100,
102 (6th Cir. 1982); *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d
620, 625 (6th Cir. 2000). An injunction, however, is an extraordinary
remedy that should be granted only after a court has considered the
following four factors:

> (1) whether the movant has a "strong" likelihood of success
> on the merits; (2) whether the movant would otherwise
> suffer irreparable injury; (3) whether issuance of a
> preliminary injunction would cause substantial harm to
> others; and (4) whether the public interest would be served
> by issuance of a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citing
*McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459
(6th Cir. 1997)). These four considerations are factors to be
balanced. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.
1985); *Mich. Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir.
2001). However, "a district court is not required to make specific
findings concerning each of the four factors used in determining a
motion for preliminary injunction if fewer factors are dispositive of
the issue." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir.
2003) (citing *DeLorean*, 755 F.2d at 1228). Finally, the movant bears
the burden of establishing that "the circumstances clearly demand"
this extraordinary remedy. *Overstreet v. Lexington–Fayette Urban*

13

*Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary*, 228 F.3d at 739).

### III.

This is an action under 42 U.S.C. § 1983 claiming deliberate indifference in connection with an alleged denial of medical care. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. A *prima facie* case under § 1983 requires evidence of (1) conduct by an individual acting under color of state law, and (2) the deprivation of a right secured by the Constitution or laws of the United States. *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Section 1983 merely provides a vehicle for enforcing individual rights found elsewhere and does not itself establish any substantive rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. In order to prevail on his claim, plaintiff must prove that defendants acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). This standard includes both an objective and

14

a subjective component.  The objective component requires that a plaintiff establish the existence of a "sufficiently serious" medical need.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The subjective component requires that a plaintiff establish that the "official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."  *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837).  However, "a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'"  *Id.* (quoting *Farmer*, 511 U.S. at 835).  "Instead, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'"  *Id.* (quoting *Farmer*, 511 U.S. at 836).

Plaintiff seeks Metamucil to treat "daily, severe pain from chronic constipation."  *Plaintiff's Reply*, p. 2 n.2.  Plaintiff testified that Metamucil is the only medication that has provided him relief and that his quality of life greatly improved with Metamucil.  Defendants do not contend that Metamucil cannot be provided to plaintiff, or that the prison's safety concerns cannot be addressed by dispensing Metamucil at pill call by a nurse. *See Hearing Transcript*, pp. 149-51. Rather, defendants deny that they have been deliberately indifferent to plaintiff's serious medical need by refusing to provide the Metamucil requested by him.

**Objective Component**

The precise medical condition on which plaintiff bases his claim has changed over the course of the litigation. The *Complaint* alleges that plaintiff suffers from diverticulosis and that defendants' failure to provide Metamucil and a high fiber diet to treat the condition constitutes deliberate indifference because the condition causes "life-threatening episodes of diverticulitis." *Id.* at ¶ 21. *Plaintiff's Motion* argues that he has established the objective component of his claim because "his risk of developing diverticulitis constitutes 'a serious medical need.'" *Id.* at p. 8.  The subjective prong is satisfied, plaintiff argues, because defendants know that plaintiff "had very few infections when Metamucil was available to him" and that "Defendants know that FiberCon is ineffective in preventing Mr. Spar from developing diverticulitis." *Id.* at p. 11. Absent an injunction, plaintiff argues, he "has a substantial likelihood of contracting a diverticulitis infection and suffering irreparable damage to his colon." *Id.* at p. 13.

At the evidentiary hearing, however, plaintiff argued that "his chronic constipation constitutes a serious medical need" and that, without Metamucil, "he suffers from chronic constipation, which keeps him in nearly constant pain." *Hearing Transcript*, p. 6.  *See also id.* at p. 8.  In *Plaintiff's Memorandum*, filed after the evidentiary hearing, plaintiff argues that the abdominal pain caused by his constipation and "numerous digestive ailments constitute" a serious medical need, *Plaintiff's Memorandum*, *PAGEID* 673-74,  and plaintiff's *Reply* takes the position that it is the severe pain cause by chronic

constipation that constitutes a serious medical need. *Id.* at pp. 1-5.
According to plaintiff, he will suffer irreparable harm absent an
injunction because of "his daily suffering under the current
'treatment' regimen." *Plaintiff's Memorandum*, *PAGEID* 687.

Some courts have found that constipation is not a serious medical
need. *See, e.g., Adams v. Rock,* 2015 WL 1312738 (N.D. N.Y. Mar. 24,
2015); *Dewald v. McCallister*, No. 4:13-CV-P6-M, 2013 WL 3280273, at *6
(W.D. Ky. June 27, 2013); *Stanfield v. Thompson*, No. 4:12-CV-P54-M,
2013 WL 899423, at *10 (W.D. Ky. Mar. 8, 2013); *Williams v. Mustafa*,
No. 08-10197, 2009 WL 483134, at *15 (E.D. Mich. Feb. 24, 2009)
(collecting cases). *See also Hudgins v. DeBruyn*, 922 F.Supp. 144, 148
(S.D. Ind. 1996); *Moy v. Evans*, 2007 WL 315068 (S.D. Ill. Jan. 31,
2007). Other courts have concluded that chronic constipation and its
associated pain and symptomatology can constitute a serious medical
need. *See, e.g., Foster v. Enenmoh,* 420 Fed. Appx. 718 (9th Cir. Mar.
10, 2011); *Greeno v. Litscher*, 13 Fed. Appx. 370, 375 (7th Cir. June
25, 2001); *Bourgoin v. Weir*, 2011 WL 4435695, *7 (D. Conn. Sept. 23,
2011). *See also McDermott v. Valley*, 2014 WL 1270733 (D. Idaho Mar.
26, 2014).

The record in this case establishes that plaintiff's chronic
constipation causes severe abdominal pain, chills, and vomiting. On
this record, this Court concludes that plaintiff's chronic
constipation constitutes a serious medical need.

### **Subjective Component**

The Court will now turn to the subjective component and the
threat of irreparable harm. To the extent that plaintiff still argues

that there is a substantial likelihood of developing diverticulitis infections and suffering irreparable damage to his colon without Metamucil (and that defendants are aware of that risk), *see Plaintiff's Motion*, p. 13, the Court finds that there is conflicting evidence on the causes of diverticulitis and whether the use of Metamucil or a fiber supplement reduces the risk of developing an infection. Dr. Bozian acknowledged that "[t]here is not complete agreement with respect to the fact that there is a relationship necessarily between dietary fiber and diverticulitis." *Hearing Transcript*, p. 34. Dr. Bozian "happen[s] to be in the school that believes that there is a relationship between significant constipation and hardened stools and the altered microbial of the bowel and the process of inflammation and diverticulitis." *Id*. In contrast, Dr. Hussan testified on deposition that the cause of diverticulitis is unknown, *Dr. Hussan Deposition*, p. 45, and Dr. Levine testified on deposition that a person can do nothing to prevent an episode of diverticulitis. *Dr. Levine Deposition*, pp. 15, 41. Because "differences of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do not state an Eighth Amendment claim," *Smith v. Sator*, 102 F. App'x 907, 909 (6th Cir. 2004) (citing *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)), plaintiff has not established a high likelihood of success on the merits of his claim that he requires Metamucil to prevent episodes of diverticulitis.

Plaintiff also argues, however, that the subjective component of his Eighth Amendment claim has been met because, "[d]espite his

18

knowledge of Mr. Spar's serious medical need, Dr. Eddy refused to provide the only medicine that has proved effective in treating Mr. Spar." *Plaintiff's Memorandum*, *PAGEID* 675 (emphasis omitted). Referring to Dr. Neufeld's four requests for Metamucil, plaintiff argues that Dr. Eddy knew of plaintiff's serious medical need, that alternative treatments had failed, and that Metamucil had effectively relieved plaintiff's symptoms in the past. According to plaintiff, "Dr. Eddy's insistence of continuing a failed 'treatment' exhibits deliberate indifference because it was so inadequate as to amount to no treatment at all." *Id.* at *PAGEID* 675-77.

As the State Medical Director at ODRC, Dr. Eddy oversees the provision of medical care to approximately 50,000 inmates. *Hearing Transcript*, pp. 109-10. Dr. Eddy first became involved with plaintiff's medical care when Dr. Neufeld submitted the first request for non-formulary drug prior authorization on September 26, 2013. *Id.* at p. 114. Prior to the evidentiary hearing, Dr. Eddy's involvement with plaintiff's medical care had been limited to reviewing Dr. Neufeld's four requests and "discussing the case with Dr. Neufeld on the telephone." *Id.* at p. 115. Dr. Eddy denied all four requests. *See Plaintiff's Exhibits 1-A, 1-B, 1-C, 1-D*. In each instance, Dr. Eddy directed that plaintiff make dietary changes and purchase FiberCon (or fiber tabs) from the commissary. The second, third, and fourth denials also suggest that plaintiff be admitted to the infirmary. *See Plaintiff's Exhibits 1-B* ("Suggest admission to infirmary to control diet, help with pain, provide antibiotics and monitor each time he has an outbreak."), *1-C* ("If he has problems,

19

then he should be admitted to the infirmary to be monitored, labs drawn and treated appropriately until 24 hours after his symptoms resolve."), *1-D* ("Admit to infirmary and follow cbc etc. when he has a flare up."). Dr. Eddy testified that Dr. Neufeld's requests lacked "objective evidence, from [Dr. Eddy's] perspective," because "[i]t was a patient request that he was reiterating to me." *Hearing Transcript*, p. 130. Dr. Eddy testified that, because he wanted objective corroboration of plaintiff's complaints, he directed that Dr. Neufeld admit plaintiff to the infirmary as a way "to obtain more objective evidence for what is being told to Dr. Neufeld and the justification." *Id*.

The evidence establishes that dietary changes are the first and preferred method of treatment for constipation. *Dr. Kanuru Deposition*, pp. 30-31, 71; *Dr. Hussan Deposition*, p. 39. *See also Hearing Transcript*, p. 43 (Dr. Bozian's testimony that the "intake of fiber is best dealt with by the body through food stuffs"). In denying Dr. Neufeld's first request for Metamucil, made on September 26, 2013, Dr. Eddy reviewed plaintiff's commissary purchases and recommended that plaintiff "make better nutritional choices," consult a dietician, and possibly implement commissary restrictions. *Plaintiff's Exhibit 1-A*. This recommendation clearly conformed with accepted medical care. Plaintiff is therefore unlikely to prevail on a claim that Dr. Eddy's original denial of Metamucil constituted deliberate indifference.

Plaintiff argues that, "[a]t the time of Dr. Eddy's denial of Dr. Neufeld's second, third and fourth requests for Metamucil, Dr. Eddy

20

was presented evidence that Mr. Spar was making appropriate
nutritional choices." *Plaintiff's Memorandum*, *PAGEID* 680.  To the
contrary, Dr. Neufeld's second request, made on February 10, 2014,
does not state that plaintiff had made any change in his diet since
the first request. *See Plaintiff's Exhibit 1-B*.  Dr. Eddy reviewed
plaintiff's commissary records and recommended, *inter alia*, that
plaintiff "eliminate low fiber foods from diet such as pastries, mac
and cheese and ramen noodles." *Id*.  Dr. Eddy noted that plaintiff
"can still also buy the fiber tabs that may be helpful if he quits
eating the low fiber foods." *Id*.  This recommendation is consistent
with Dr. Eddy's testimony that, with an improved diet, plaintiff could
obtain relief with FiberCon despite his previous complaints of no
relief. *See Hearing Transcript*, p. 157.  Again, this response is
consistent with the standard treatment of constipation.

    Dr. Neufeld's third and fourth requests, made on April 15, 2014
and November 24, 2014 respectively, do indicate that plaintiff had
"adjusted purchases in commissary" and that the dietician "recommended
to continue current diet and add Metamucil." *Plaintiff's Exhibits 1-
C, 1-D*.  Plaintiff argues that, despite the improvement in his diet,
he

> continue[d] to suffer from abdominal pain and chronic
> constipation.  Thus, Dr. Eddy is aware that the treatment
> plan that he has doggedly required is ineffective.  Yet he
> remains unwilling to prescribe Mr. Spar a treatment that
> has been effective in alleviating Mr. Spar's suffering.
> Such obstinacy is the definition of deliberate
> indifference.

*Plaintiff's Memorandum*, *PAGEID* 680.  Dr. Eddy acknowledged at the
evidentiary hearing that plaintiff had made better commissary choices

over time; Dr. Eddy nevertheless still believed that plaintiff needed
to make further changes to his diet. *Hearing Transcript*, pp. 150,
155; *Plaintiff's Exhibits 1-C*, *1-D*. Moreover, Dr. Neufeld's third and
fourth requests make no mention of abdominal pain or constipation.
*See Plaintiff's Exhibits 1-C*, *1-D*. Instead, the requests state that
plaintiff had experienced a "recent case of Diverticulitis" and a
recent "flair [sic] up" that required antibiotics. *Id*. This failure
to mention abdominal pain and constipation belies plaintiff's argument
that Dr. Eddy subjectively perceived a substantial risk to plaintiff
based on chronic constipation and related abdominal pain when Dr. Eddy
denied Dr. Neufeld's third and fourth requests for Metamucil.

Plaintiff also argues that Dr. Eddy's "need for 'objective
evidence' of Eric Spar's ongoing condition is a post-hac
rationalization not supported by the evidence." *Plaintiff's
Memorandum*, *PAGEID* 681 (emphasis omitted). Plaintiff reads Dr. Eddy's
denials of Dr. Neufeld's requests as indicating "that Dr. Eddy only
wanted Eric Spar to go to the infirmary for diverticulitis outbreaks."
*Id*. Plaintiff disagrees that Dr. Eddy either wanted or needed
additional objective evidence corroborating plaintiff's complaints.
*Id*. "Dr. Eddy never suggested that he had insufficient information to
determine whether Metamucil was necessary" when responding to
plaintiff's first motion for preliminary injunction. *Id*. at *PAGEID*
682.

Dr. Eddy acknowledged at the evidentiary hearing that he did not
expressly mention a need for additional objective evidence when he
denied Dr. Neufeld's requests. *Hearing Transcript*, pp. 148. However,

"[t]hat's why we admit people to the infirmary in an institution, is to get more objective evidence of what is going on." *Id*. Moreover, the Court disagrees with plaintiff's contention that the denials of the second and third requests "suggest that Dr. Eddy only wanted Eric Spar to go to the infirmary for diverticulitis outbreaks;" a plain reading of Dr. Eddy's denials would suggest otherwise. *See Plaintiff's Exhibits 1-B*, *1-C*. The fourth denial does suggest that plaintiff should be admitted to the infirmary when he experiences an episode of diverticulitis. *See Plaintiff's Exhibit 1-D* ("Admit to infirmary and follow cbc etc. when he has a flare up."). However, as noted *supra*, Dr. Neufeld's fourth request made no mention of plaintiff's constipation or abdominal pain. Regardless of whether plaintiff informed Dr. Neufeld that he was suffering from constipation and abdominal pain, that information was not conveyed to Dr. Eddy in the request for Metamucil.[3]

In short, this Court concludes that plaintiff has not established that Dr. Eddy was deliberately indifferent to plaintiff's serious medical needs through the date of the evidentiary hearing.

The records from plaintiff's stay in the prison infirmary, however, would seem to provide the objective evidence sought by Dr. Eddy to support plaintiff's complaints that the recommended alternative to Metamucil, *i.e.*, FiberCon, fails to control or to alleviate his symptoms notwithstanding improvement in his diet. The

---

[3] As noted by plaintiff, "Dr. Neufeld was unavailable for the depositions and the hearing, . . . so the court must rely on the medical record to understand his opinion." *Plaintiff's Reply*, p. 6 n.2.

parties offer no evidence that plaintiff's treatment has changed or, specifically, that Metamucil has now been made available to plaintiff.

To the extent that Metamucil is at this point withheld from plaintiff, then, the Court concludes that plaintiff has established a strong likelihood of success on the merits of his claim. Moreover, the evidence establishes that, without Metamucil, plaintiff will suffer irreparable injury in the form of continued pain. Finally, the prison's legitimate security concerns, and those of the public, can be adequately addressed by administering the Metamucil by a prison nurse. Under these circumstances, the issuance of a preliminary injunction is therefore appropriate. *See Leary*, 228 F.3d at 736.

It is therefore **RECOMMENDED** that, unless evidence is presented that plaintiff is now provided Metamucil, *Plaintiff Eric Spar's Motion for Temporary Restraining Order and/or Preliminary Injunction*, ECF 60, be **GRANTED.**

*Plaintiff's Motion to Supplement Post-Hearing Briefing*, ECF 86, is **GRANTED.**

## IV.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


October 9, 2015                          *s/Norah McCann King*
                                       Norah M<sup>c</sup>Cann King
                                 United States Magistrate Judge